DiCKMAN J.
The plaintiff in error, John E. Sipe, was arrested upon the charge of having unlawfully sold and offered for sale at auction certain goods and merchandise, -within the corporate limits of the city of Columbus, which had been imported into that city for the purpose of being *542 sold at auction by him, without having first procured the required license therefor. The. arrest was made for an alleged violation of the ordinance passed February 19,1877, “To regulate and license the sale at auction within the city of Columbus, of goods, wares and merchandise imported into said city for the purpose of being sold at auction.
It is contended that the municipality had no authority to pass the ordinance, and that the plaintifF in error was therefore unlawfully restrained of his liberty. It.is claimed, however, in behalf of the city of. Columbus and John E. Murphy, defendants in error, that the ordinance in question was properly passed under the following provisions of section 1692 of the Revised Statues: “In addition to the powers specifically granted in this title, and subject to the exceptions and limitations in other parts of it, cities and villages shall have the general powers enumerated in this section, and the council may provide by ordinance for the exercise and enforcement of the same. * * * 9. To regulate auctioneering, and to regulate, license or prohibit the sale at auction of goods, wares and merchandise imported into the corporation for the purpose of being sold at auction.”
The powers thus vested in cities in reference to auctions, though general, are not without limitation. It is not to be presumed from the language of the statute, that it was the design of the legislature to authorize the passage of ordinances that would be unjust, or oppressive, or unfair and partial, or in restraint of trade, or in contravention of public policy, or containing special and unwarranted discrimi-nations against property brought into the corporation from other parts of the same state to be sold at auction, or ordinances containing such discriminations against property brought into the corporation from another state for the same purpose, and thus in conflict with the powers of congress to regulate commerce among the several states. And while ordinances subject to such infirmities cannot be deemed to'be authorized by the statute, obviously it cannot be held that the municipal body has such authority by vir- *543 tu'e of the general incidental power of municipal corporations to enact appropriate by-laws or ordinances.
Under the authority given by the statute, “to regulate auctioneering,” city councils, in view of promoting the order, comfort and convenience of the inhabitants, may pass ordinances regulating sales at auction upon the streets, alleys, sidewalks, and public grounds of the city, and may subject the occupation of auctioneering to such police regulations as seem essential to the public convenience and protection. By the same authority, councils may, upon principles of equality- — without discriminating against the goods imported — license the sale at auction of such goods imported into the corporation for the purpose of being thus sold, and when the public health, or the public safety, or the morals of the citizens of the municipality are endangered, may prohibit the sale at auction of goods imported into the corporation for such purpose. But, we do not find the reasonable intendment of the statute to be, to empower councils to arbitrarily prohibit, either by words of prohibition or by heavy license fee, the sale at public auction of goods imported into the city for the purpose of being sold at auction, notwithstanding such goods may be of a harmless nature,and even useful and beneficial to the community.
The ordinance under consideration provides in sec. 1 that, “it shall be unlawful for any person, persons, party or corporation, by himself, themselves, or itself, or by any agent, within the corporate limits of the city of Columbus, to sell or offer for sale at auction, any goods, wares or merchandise which have been imported into said city for the purpose of being sold or offered for sale at auction, unless such person, persons, party or corporation shall first procure a license so to do, as hereinafter provided.” Such license can be procured only upon receipt from the party making application, of twenty-five dollars for each day and part of day such party may desire so to sell and offer for sale such goods — the applicant having first complied with the requirements of the statutes of the state, regulating the listing of the goods for taxation, and for the payment of the taxes thereon. For violating any of the provisions of the ordi *544 nance, the offender, for the first offense, is fined in the sum of twenty-five dollars and costs of prosecution; and for any repetition of the offense, a fine is imposed of not less than twenty-five nor more than fifty dollars, in the discretion of the mhyor, with the costs of prosecution.
In the case at bar, the goods imported into the corporation for sale by auction were wholly without the corporate limits, and a portion were without the state, but those from beyond the borders of the state were not sold in original but broken packages, intermingled and at retail. No foreign goods were sold while remaining in .the packages in which they were imported. And as the ordinance does not impose a heavier burden upon goods brought from another state than upon goods brought into the city from other places within this state; as it does not in any way discriminate between merchandise imported from other states and merchandise imported from any other part of the state of Ohio outside of the city of Columbus, it is therefore argued, that the ordinance under which the plaintiff in error was arrested, was not in violation of the constitutional provision vesting in congress alone the power to regulate commerce among the several states. Having reached the conclusion that the ordinance is invalid on other grounds, we do not deem it necessary to examine that constitutional question. Though a constitutional question may be legitimately presented by the record, yet if the record also presents some other and satisfactory ground upon which the court may rest its judgment, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it, and when consequently a decision upon such question will be unavoidable. Cooley Const. Tim. 196, 6 Ed.
It will be observed, that the object of the ordinance in question is not to exact a license fee from the auctioneer because he is not an actual resident of the city, or has not paid for a city license. The license fee made payable by the ordinance is incident more to the goods than to the auctioneer or owner. It is required because the goods are *545 brought from outside the city for the purpose of being sold or offered for sale therein at auction, and not where they are already in the city before it is purposed to sell them therein at auction; and the situs of the goods at the time of first conceiving the design of selling them at auction, is made the criterion for exacting a license fee which is, in effect, a tax upon the goods themselves.
The owner, whether residing in the city of Columbus or not, must pay twenty-five dollars per day for the privilege of there selling his goods at auction, if imported into the corporation for that purpose. But, if the goods be imported to be sold at retail or wholesale in the ordinary course of trade, or are already within the corporate limits when the owner forms the purpose of there selling them at auction or in any other manner, he may so sell them, without the payment of the license fee of twenty-five dollars per day.
The license fee thus exacted is in addition to the duties to which all property and effects offered for sale and struck off at public auction are subject under section 4226, of the Revised Statutes. If the articles imported into the corporation for the purpose of sale at auction, do not exceed in value the sum of twenty-five dollars, the same license-fee is required, and the property is thereby virtually confiscated. The owner, in such case, is denied the right of selling at auction, unless such right is exercised at the cost of practically sacrificing his goods. And in this connection it may be noted, that in addition to the duties to which articles sold at auction are subject by section 4226, auctioneers, in cities of the first grade of the first class, whose sales amount to less than seventy-five thousand dollars -per annum, are required to pay a license of only twenty-five dollars per annum. Revised Statutes, section 2672 (37).
Upon an examination of the ordinance under consideration, we are led to the conclusion, that its passage was not a reasonable exercise of the power to legislate on the subject of auctions, as conferred by section 1692, of the Revised Statutes.
1. The effect of the ordinance is largely to prohibit, under the name of a license, the sale at auction of goods *546 brought into the corporation for that purpose, which enter into the daily use and consumption, and which would not be excluded by any police regulation as being 'detrimental to the public health, comfort and convenience.
2. The ordinance is not impartial, and unjustly discriminates by the imposition of the license tax, between goods, wares and merchandise in the city, and such as may be imported from other cities or places within the borders of the state, for the purpose of sale at auction.
3. The ordinance is in restraint of trade. It checks the freedom of commercial intercourse, in treating unequally goods of the same class, kind and quality, by, in effect, levying a heavy tribute on the goods, as a condition on which the owner can be allowed to sell the same at auction, when imported into the corporation for that purpose. It places an unwarranted impediment in the way of the buyer and seller in acquiring and disposing of property. By a policy of exclusion, it tends to the creation of monopoly, by protecting local tradesmen and merchants against outside competition.
4. The ordinance is opposed to the public policy of the state. It is very plain that the power vested in Congress by the constitution to “regulate commerce among the several states,” rests upon a most obvious and enlightened public policy. A very material object of this power is the relief of the states which import and export through other states, from the levy of improper contributions on them by the latter. If each state were at liberty to regulate the trade between state and state, it is easy to' foresee that ways would be found out to load the articles of import and export, during their passage through the jurisdiction, with duties, which should fall on the makers of the latter, and the consumers of the former. Story Const., § 1066; Federalist, No. 42; Brown v. State of Maryland, 12 Wheat. 448, 449; Gibbons v. Ogden, 9 Wheat. 199 to 204.
The same wise policy that dictated such a power to regulate the commercial intercourse of the states with each other, would suggest and give force to the policy of prohibiting cities and towns within the same state, from imposing *547 illiberal and unjust restraints upon their trade and commerce with each other.
In the case of Ex parte Frank, 52 California, 606, the petitioner having been convicted of a misdemeanor for the violation of what was known as the “Sample-seller’s Ordinance” of the city and county-of San Francisco, and being restrained of his liberty upon process issued upon the judgment of conviction, he was brought before the court on a writ of habeas corpus, and claimed that he was entitled' to be discharged from custody, on the ground that the ordinance was unconstitutional and void. The ordinance was passed under a general power conferred by the charter of the city, which exacted a license for selling goods, and fixed one rate-of license for selling goods which were within the corporate limits, or in transitu to the city, and another and much larger license for selling goods which were not in the city, or in transitu to it.
The court in holding the ordinance to be inoperative and void said: “It is flagrantly unjust, oppressive, unequal, and partial. It discriminates between merchants in the same place, dealing in the same kinds of merchandise, for no better reason than that one deals in goods either actually in the corporate limits, or in transitu under a bill of lading, while the other deals in goods outside the corporate limits, and not in transitu under a bill of lading. If this kind of discrimination be legitimate and valid, there is no reason wrhy a merchant having his goods in a warehouse on a particular street might not be required to pay a license fee of ten thousand dollars, while another merchant doing the same kind of business, in the same city, and with his goods stored in another street, would be required to pay only ten dollars. It also contravenes the public policy of the state, in that it obstructs commercial intercourse between the principal seaport city of the state and the interior; the policy being to foster and encourage commercial intercourse and a free interchange of commodities between the several sections. It is in restraint of trade, in that it exacts a heavy tribute from the owner of goods outside the corporate limits and not in transitu, as a condition on which *548 be will be allowed to offer them for sale in the principal city and seaport of the state.”
The discrimination in the above cited case was against goods which were not within the corporate limits or in transitu to the city at the time they were sold, while in the case at bar, the ordinance under consideration discriminates against goods that are outside the city when the purpose originates to sell them within the corporate limits. The discrimination in the two cases differs but slightly in the alleged objectionable features.
Sections 4222 to 4238 inclusive, ®f the Revised Statutes, among other things, provide for the issuing of a state license ' to auctioneers, and for the payment of pro rata duties on all property and effects exposed to'sale by public auction. In our view there is no inconsistency between these provisions and section 1692 of the Revised Statutes. But with the implied limitations in that section upon municipal legislation, we are not prepared to affirm the validity of the ordinance, for the alleged violation of which, the plaintiff in error was arrested. The judgments of the courts below must therefore be reversed, and the plaintiff in error discharged from custody.

Judgment accordingly.